# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DORIS CRAWFORD, | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : 3-07-cv-113 (JCH) |
| vs. | : |
| | : NOVEMBER 26, 2007 |
| FIRST COLONY LIFE INSURANCE CO. | : |
| Defendant. | : |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 15)**

Plaintiff, Doris Crawford, brings this Complaint against the defendant, First Colony Life Insurance, Co. ("First Colony"), alleging breach of an insurance policy of which she was the beneficiary. See Complaint, Att. A to Notice of Removal (Doc. No. 1). First Colony moves for summary judgment as to Crawford's complaint.

## I.  FACTS[1]

The factual background of this case is essentially undisputed. On July 8, 2004, James S. LePage, Sr., filled out an application for Life Insurance seeking a term life insurance policy in the amount of $250,000 from First Colony. On that date, LePage executed a Temporary Insurance Application and Agreement ("TIAA"). In consideration for the TIAA, LePage paid a total of $469.99.

On September 1, 2004, First Colony issued a twenty-year Term Life Insurance Policy ("the Policy") to LePage in the amount of $250,000. The policy was backdated

---

[1]For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true and resolves disputed facts in favor of the non-moving party, where there is evidence to support her allegations.

such that the "Policy Date" was April 28, 2004, so that LePage's age would be forty-six for the purposes of calculating his premiums. The Schedule, which is part of the Policy, lists the "Date of Issue" as September 1, 2004. The "General Provisions" portion of the Policy contains a section describing the purposes of the Policy Date and the many anniversaries and deadlines derived from it. There is no equivalent description of the Date of Issue.

The Policy contains a Section titled "Suicide" ("the Suicide clause"), which states that "[i]f the insured, while sane or insane, dies by suicide within two years after the Date of Issue shown on the Schedule, the death proceeds under this Policy will be an amount equal to the premiums paid less the loan balances as of the date of death." Policy at 5, Ex. E to Def.'s 56(a)(1) Statement (Doc. No. 18). The only other mention to the Date of Issue in the Policy is in the section labeled "Incontestability," which similarly creates a time limitation based on the Date of Issue.

Le Page received and signed the Policy on September 23, 2004. He sent First Colony a check for $593.26 to satisfy monthly premiums through September 28, 2004. Le Page died of suicide on May 28, 2006. Crawford, LePage's sole beneficiary under the Policy, submitted a claim under the Policy in June, 2006.

## II.     STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>White v. ABCO Engineering Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000). Once

the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III. DISCUSSION

The question before the court is whether Crawford is entitled to receive the full value of the Policy, given that LePage died prior to the second anniversary of the Issue Date. It is well settled that "[c]onstruction of a contract of insurance presents a question of law for the court" and that interpreting insurance contracts "involves a determination of the intent of the parties as expressed by the language of the policy . . . ." Connecticut Insurance Guaranty Association v. Fontaine, 278 Conn. 779, 787 (2006)(internal quotation omitted). In construing such a contract, it "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy, giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured." Id.

First Colony argues that Crawford is not entitled to the full value of the policy because the language of the Suicide clause barring collection of the full value of the policy until two years from the Issue Date is unambiguous. Def.'s Mem. in Supp. of Mot. for Summ. Judg. ("Def.'s Mem.") at 7-8 (citing New York Life Insurance, Co. v. Noonan, 215 F.2d 905, 906 (9th Cir. 1954)(finding that suicide provision governed by the date of issue rather than the effective date of the insurance is unambiguous); Crowley v. Travelers Ins., Co, 196 F.2d 315 (5th Cir. 1952)(same); Davis v. Fidelity Mutual Life Ins. Co., 107 F.2d 150 (4th Cir. 1939)(same)). The court disagrees.

In analyzing whether the terms of the Policy were ambiguous as to the Suicide clause, the court finds persuasive the reasoning of the Eleventh Circuit in Travelers Insurance Co. v. Summers, 696 F.2d 1311 (11th Cir. 1983) and the Fifth Circuit in American National Insurance Co. v. Motta, 404 F.2d 167 (5th Cir. 1968). In Travelers, the court found that a suicide clause, similarly based on the date of issue, was ambiguous when read in conjunction with the application for insurance and the "Conditional Coverage Receipt." Id. at 1313. The Conditional Coverage Receipt in Travelers made "[i]nsurance under the terms of the contract applied for" effective when required medical exams were completed and premiums were paid. Id. at 1312. The court found that the policy at issue, read in conjunction with this Receipt, created an ambiguity because the Receipt made provisions of the policy effective on one date, and the Policy made the same provisions effective on a different date. Id. The court in Motta found that a similar "conditional receipt" created an ambiguity when read in conjunction with the policy at issue becuase it was "subject to the terms of the policy" before any such policy was in existance. Motta, 44 F.2d at 168. The court found that

4

by incorporating the terms of the policy into the conditional receipt it was "quite unclear as to what terms apply to the insured during the period between application and issuance of the policy." Id.

The courts deciding the cases cited by First Colony did not confront the situation of a conditional receipt which incorporated the terms of the policy. Both the Crowley and Davis courts found that there was no ambiguity created between an application for insurance and an insurance policy when the terms of the policy made the application a part of the contract. Crowley, 196 F.2d at 316; Davis, 107 F.2d at 906. That scenario is not the case here, where the TIAA incorporated the terms of the Policy, rather than the Policy incorporating the terms of the TIAA. The Davis court did not address any application or pre-contract agreement. Davis, 107 F.2d at 150.

Like the policy at issue in Travelers, the temporary insurance provided by First Colony to LePage, during the period between filing his application and receiving the Policy, incorporated the terms of the Policy into the temporary coverage. See TIAA, Def.'s Mem., Ex. B (making TIAA "subject to the terms of the policy applied for"). First Colony argues that Travelers is distinguishable because here, the temporary insurance coverage was a separate agreement that did not "activate" and "merge" with the Policy. Def.'s Reply Mem. ("Def.'s Reply") at 8 (Doc. No. 20). While it is true that the TIAA states that "the policy will replace this TIAA," the court finds that by incorporating the terms of the Policy into the TIAA, the parties intended for the provisions of the Policy to control during the period before LePage received the Policy. As the Travelers court noted, by incorporating the terms of the policy into the temporary coverage, the insurance company surely intended to bind the insured by the provisions of the Policy,

5

including the Suicide clause, during the period that the TIAA was in effect. Travelers, 696 F.2d at 1313. By both incorporating the terms of the Policy into the TIAA, and then arguing that those same terms were not in effect prior to the Issue Date, First Colony's interpretation of the policy creates an ambiguity as to when the parties intended the Suicide clause to be effective. Having determined that incorporating the terms of the Policy into the TIAA created an ambiguity as to when the Suicide clause went into effect, the court must resolve that ambiguity in favor of the insured. See Connecticut Insurance Guaranty Association v. Fontaine, 278 Conn. at 787.

For guidance on the question of when the parties intended for the Suicide Clause to be effective, the court turns to Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U.S. 167, 175 (1923). The Court in Mutual Life found that, where the term "Date of Issue" was undefined in an insurance policy, the words referred "not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself," even though the policy was backdated. Id. (internal quotations omitted). The Court found that "[i]t was competent for the parties to agree that the effective date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did." Id. at 175-6. This reasoning applies here to the interpretation of LePage's Policy. First Colony and LePage bargained for a Policy Date of April 28, 2004, and it is clear from the definition of "Policy Date" that they intended this date to control the operation of the contract. See Policy at 2, Ex. E to Def.'s Mem.

First Colony argues that, in the event the court finds the terms of the Suicide clause ambiguous, the clause should be found to run from July 8, 2004, the date that

6

LePage received temporary coverage under the TIAA. Def.'s Mem. at 10 and Def.'s Reply at 6-8. First Colony cites no support for this position, nor can the court find any.

Where the incorporation of the terms of the Policy into the TIAA and the lack of definition of the term "Date of Issue" has left an ambiguity as to when the parties intended the terms of the Policy to become effective, the court resolves this ambiguity in favor of the insured and finds that the parties intended the Suicide Clause to become effective on the bargained for Policy Date of April 28, 2004.

## IV.  CONCLUSION

For the forgoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 15) is DENIED. Defendant is further ORDERED to show, by December 10, 2007, why this Ruling should not result in Judgment for the Plaintiff.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of November, 2007.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge